The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated and good morning. We are ready to hear argument in the first case of Cologne Industries v. DuPont. Mr. Kinard? Did I say your name right? Kinard? Very close, Your Honor. Kinard. Kinard, okay. Glad to hear from you. Thank you. May it please the Court. Section 455B imposes upon the District Court an independent and unwaivable duty to recuse himself if the case will involve a matter that was handled by his former law partner, will involve evidence of a matter handled by his former law partners during his tenure. The Richmond AXO litigation handled by McGuire Woods during the District Judge's time at that firm became a matter in controversy in this case both as to the trade secret claims prior to severance and as to the antitrust claims after severance. As DuPont sought to exclude evidence of the AXO litigation and to bar discovery into the AXO litigation. What do you think is in dispute about that section? Is it matter in controversy? Is that the key issue in your mind? I think DuPont would dispute both, the parties dispute both whether this was a matter in controversy. No, but I asked you what you thought the major issue was. The major issue I think here would be whether timeliness, and I think this is an open issue after Owens. Timeliness is not written in anywhere in the statute, is it? That's right. I'm talking about looking at the statutory language. What do you think is the major issue in the application of that statute? Is it a lawyer with whom he previously practiced law served? I think that's undisputed. So is it matter in controversy? As for the statutory language? Right. Well, the District Court said this was not close enough to be a matter in controversy. I'm saying, but you don't agree with that, do you? We don't agree with that. So you think that's the point of the issue? That's the point of the issue under the statute, but the District Court also thought there was an implied timeliness restriction. We'll get to that too. Let's talk about matter in controversy now. How do we define matter in controversy? It was defined in Rogers not only as being the case over which the district judge presided, but any matter where the claims are defenses would concern a prior matter that was handled by the judge's law partners. What would happen in this case? Apply your definition of matter in controversy in this case. So the Richmond AXO litigation was handled by McGuire Woods during the 1980s when the district judge was a partner. And so that satisfies the Rogers definition. And it's in controversy because it came up when DuPont sought to exclude the AXO evidence prior to severance, and then in the antitrust phase after severance blocked discovery and had the judge rule on those. Do you think you have to make at least some colorable claim? I don't mean that as a term of order, but some kind of claim that that prior litigation really is relevant to or potentially involved with the current case to include it within the matter in controversy? Well, I think we certainly have that. But I'm asking, do you think you have to do that? I don't think we have to where the issue is discovery of the evidence. So here, I think as to both claims, it is directly relevant. And I can discuss that with your honor if you'd like. But I think it should also encompass whether he's even going to allow discovery as to that prior matter, because it's the same issue of potential conflict. And so in the trade secret case, what happened? And I think it's important to understand. Also, and this goes to the knowledge of the parties and the judge. What happened was we had sought discovery of the files of the council in the Richmond Axel litigation, McGuire Woods and Fitzpatrick Chella. DuPont informed us that neither firm had those files. So we subpoenaed Fitzpatrick Chella, and it turns out they had hundreds of boxes. And then DuPont, before it produced it, reviewed for privilege. And the billing records that were disclosed during the attorney's fees phase of the trade secret case indicates that they were searching for Judge Payne's name within those documents. Say that one more time. So they were doing, I suppose, a privilege review before production. And the attorney billing records for McGuire Woods, which were disclosed relative to the award of attorney's fees in the trade secret case, indicated that the attorneys were actually searching for the judge's name and conferring with the partners about those searches. So they had discovered... This was internal memoranda or correspondence? Billing records. I guess I'm wondering how you were able to say what they were searching for. Because they disclosed, to justify their attorney's fees, they disclosed the tasks that they were doing as part of the search. And one of them was to search for Judge Payne's name in the production. Because there's at least a letter and a telecopier sheet that indicates that he had forwarded the complaint to Fitzpatrick Chella and that he had a conversation with him. Asco litigation, semicolon, search database for Payne's name. That's one. I believe there's some for associates and the like. So that went on. Instead of disclosing that to either Cologne or to the judge, they, within days, moved to exclude all the actual evidence. And the judge actually disclosed that. So they had, I think, superior knowledge, certainly had knowledge from their own firm about that they handled this matter. And it didn't come to light later until it was when we were reviewing the documents in the course of preparation. We also see the reference on a file index to Judge Payne's name. What do you make, if anything, of the fact that there is a letter in the file with Payne's signature on it? I think that means that. I mean, as a practicing attorney. Well, it appears that the complaint went to him. So he had some relationship, I suppose, with DuPont or some standing relationship where he would be the one who would receive that litigation or would be forwarded to him. Now, we don't know that. Well, we don't know that. But he had some involvement, and he's a senior partner at the firm. Are you relying on that, or is it simply that his partners had apparently substantial involvement in the related matter? I think it's both, but certainly that it's the partners. I mean, we accept the judge's representations, that that was the extent of his recollection and based on his in-camera review. Which way does that cut in your analysis? That the judge, when presented with a letter with his name on it over a copy of the complaint that had been telecopied, goes, I don't remember this or anything about it. Which way does that cut? Well, I think that further indicates it's in controversy. Yes, Your Honor. No, no. I mean, as far as he can't remember, but there's a document that indicates he did something. Right. Do you think the fact that he can't remember helps the case against recusal, helps the case for recusal, the fact that he can't remember what he did? Well, you know, it does indicate that it wasn't whatever was involved that wasn't enough for his memory. But I think we can only take that as a neutral factor. Well, it might indicate that he did more, but he just can't remember it because he can't even remember the letter that's put in front of him. That could be, Your Honor. Well, I mean, if he had been local counsel for a, well, I suppose that's not a good analogy, but if that's the only evidence you have is that he received a complaint, no other involvement by anybody else related to his firm, would that be enough to recuse him? If that were enough, you know, I don't know that if, it's difficult. I think. What you're relying on predominantly is the activities of his partner. Well, his partner, that's clearly a violation of Rogers. Yes, Your Honor. So, I think it's a difficult. I'm not suggesting otherwise. I'm just asking you, you know what, you can move beyond that. There's a document with his name on it, and I just ask you what you make of it. I think that this should be a very strict rule. We're not saying he had substantive participation, but I think the fact that he had any involvement, you know, with the case should have been enough. But certainly, there's no question as far as substantive involvement that McGuire Woods was deeply involved. What about timeliness? What about timeliness? Well, Your Honor, I think all parties then had knowledge of this matter and McGuire Woods' involvement in August 8, 2010. And the question is, the open question I think in this circuit, is timeliness a conditioned precedent to the judge's recusal, or simply as the federal circuit we think correctly has held, an equitable limitation on the relief, possibly, that may be granted to a party? So, do you concede that if it's the former, you lose?  Well, I think that I wouldn't concede that because I think all parties had equal access to the facts. So, it doesn't make any sense. But you're the party who's got the onus. Obviously, the judge has an independent obligation to analyze the facts and determine for himself. But you have an equal obligation, it seems to me, if you have knowledge to present those facts to the court. As does DuPont. And I think what happened here is that in the press of the case, we didn't appreciate the legal significance of those facts under the broad construction of Rogers until it was researched. And then we raised it immediately. What are we supposed to do about Owens then? What Owens, I think, says is that it does say timeliness is required. What does it mean by that? And I think that the federal circuit is right. It can't be a condition precedent because, A, unlike 144, the prior recusal statute, there is no requirement of 10 days before term or anything like that. There's nothing about timing in the statute. Second, it's an independent duty of the judge. As the 10th Circuit does, it's effectively jurisdictional for the judge, not for the court, but for the district judge. So once those facts are there, he has no power to sit. And it can't be a right that is forfeited because there's no private right on disqualification. This is a public duty. It's instituted to protect the public's confidence and faith in the judiciary. Under your reading of the case law and the rule, at what point was the earliest point that we could be sure in this case that he had a notice of the issue? July 20th, 2011. By what act? Because that is where, in the course of briefing, the issue of the adverse inference for Mr. Schultz, who was a witness at AXO, and we sought to have evidence to be able to, in relation to that instruction, bring forth evidence, including of McGuire Woods, a partner, testifying as to the declassification of those documents. And you told the judge at that point? Yes, we did. And in the briefing, we cited Rogers, and we said there's some question about whether your honor- What would the remedy be, in your mind? If you were right, what would the remedy be? Well, number one, the judge has to be recused. We got that, but at what point? I mean, at what point do we stop and overturn the proceedings? Well, at a minimum, in July 2011- At that date? Yes. But I think, actually, in the absence of any evidence of inequitable conduct by Cologne, and there was no such evidence, then really it should just go back for a new trial de novo, and then start afresh, where there can't be any possible take. Because that's what Owens- Including pretrial rulings? I think so, your honor, yes. But at a minimum, the trial needs to be vacated, because that was before trial that we raised this. But you just said, you said a trial de novo, but that would be picked up after that date, wouldn't it? This was before the trial. This was before the trial, but I think, right, if you place the date at July 20th, I think there should be no question under the Polaroid rule that anything thereafter should be vacated. Well, but I'm asking you, did you suggest otherwise? Well, I think that the way the Polaroid- The Polaroid, you see, I heard the same way I think I heard what Judge Davis heard. Are you suggesting that it go back to overturn some proceedings that occurred before the time in which the judge was put on notice? I think that's permissible, your honor, because there's no inequitable conduct here, and that's what the timeliness rule really is designed to prevent that gamesmanship lying in wait. But at a minimum, I think any ruling, including all the trial rulings after July 20th, should be vacated. As to everything in the case, trade secret and antitrust. And so I think that is the proper rule. What's the policy rationale for having a timeliness requirement for one portion of 455 and not for the other? I think because Congress made the decision that certain of these would be waivable and certain wouldn't. So there is an element of private right in Section 455A. One can make the argument that there should be no timeliness requirement at all. But at a minimum, I think there is a defensible line and a proper line at 455B. So why have most of the federal courts that have considered this issue gone the other way? I don't think that they have considered it really. I think the federal circuit is just the one that has hit the nail on the head. And I think courts have a tendency to believe parties should be raising these motions and haven't really reconciled the statute with those policies. Because why, if a party is for some reason, or both parties, don't seize on the issue immediately, why is a district court judge excused from his independent and quasi-jurisdictional duty? It makes no sense. That's why it should be a relief. And courts have also drawn the distinction between waiver and forfeiture. But the problem is that, you know, why would you forbid waiver? It's because it's not a private right. It's a public rule. And therefore it shouldn't be subject either to waiver or forfeiture. So we think that this case should be, both cases, should be vacated and remanded, at least for new proceedings after July 20th, but I think even more properly to allow a new district judge to look at things afresh. On the antitrust claim, Your Honor, I see I'm almost out of time. Be quick. Okay. I would just point out DuPont's central argument is actual exclusion. We've, in our 28J letters, shown that the Supreme Court has said you do not need to prove actual exclusion, i.e. that Cologne actually would have made sales to these customers but for the agreements. And, in fact, the court applied that in Hanover Shoe and in Eastman Kodak, it said that monopolist violates Section 2 if its conduct forecloses competition, gains a competitive advantage, or destroys a competitor, and therefore monopoly powers itself an error, but we also, for reasons in our brief, meet the standard of foreclosure. And I'll have to address that on rebuttal. Thank you. Thank you very much. You've reserved some time. Thank you very much. Mr. Gardner. May it please the Court, good morning. My name is Kent Gardner and I represent DuPont. Starting with the recusal issue, Your Honors. Counsel was right that this was first brought to the judge's attention in July 20th and at the July 27th. Of everybody involved, if the judge didn't remember, who knew about it first? Who knew about the judge's specific involvement in the case? I think it was learned first by DuPont counsel. And you did what at that point? Searched the records of Axo. And immediately contacted the judge and told him you had a letter, contacted the other party and told them you had a letter that indicated he may have had some connection to the case? In August, in November, I'm sorry, October, Your Honor, of 2010, that information was disclosed to Cologne. That's not what I asked you though. I said did you immediately contact the other side and the judge to indicate there may be a question under the statute or the code? No, Your Honor. DuPont did not see it as an issue. It was a single line in an index that indicated a fax transmittal. That single line, that fax transmittal was disclosed in October of 2010. We come all the way around to the pretrial conference. Very important what happens at the pretrial conference because Cologne's counsel raises it, about to go to trial, and then says to the judge in court, we got this privilege log months ago. Getting that document was not something that in my mind would trigger, you know, any bias or anything like that. That's counsel. I know, but the point is, who makes that independent judgment under 455 as to whether or not he disqualifies himself? That's what the court does. And so what did the court do at that point, Your Honor? Before the case goes to trial, he orders a review of every document. And what happens is, this is Fitzpatrick-Chella, 588 boxes later, and that was disclosed to Cologne, there's nothing more. The single document that Cologne's counsel said wouldn't by itself give me any cause for concern. Do you think, do you make any argument on, and I'm just talking about the actual document. We won't get into a matter of controversy. Do you make any claim on that they didn't act timely? Absolutely, Your Honor. Should we allow you to do that when you didn't act timely? Yes, Your Honor. How long was it, we know it was what, at least from July until October, till you called that letter, which at least indicates some involvement by Payne. You didn't call that to anybody's attention, did you? That's right, Your Honor. DuPont did not see that as triggering the statute. I stand that, but the point is, but you would say the other side wasn't timely because they didn't act, when in fact DuPont didn't act as soon as they had information, did they? The issue of disqualification turns on whether the judge's involvement is tainted. But the question is, that's a judgment that he makes, correct? Not that for you to make it, or for him, I mean for the other side to make it. But I'm talking about notice of information of everybody involved in this case, if you take it that the judge couldn't remember, which maybe is understandable, if all he did was pass one letter to somebody. But DuPont had the information first, information at least on his own involvement, but that didn't trigger any action by DuPont. No, Your Honor, because DuPont did not believe that this 25-year-old single patent case had anything at all to do . . . I'm saying, but DuPont was involved in a case, an earlier case, in which this presiding judge had his name affixed to some letter. Yes, Your Honor. It's fine for DuPont to think that, but if we're going to talk about timeliness, doesn't it seem that that should be called . . . because you may be right, it may be that it didn't amount to anything, but it seems to me it's a little bit hard to hear DuPont scream about timeliness when they were first to know about it, but not the first to act on it. Your Honor, we haven't seen in any of the cases the courts weighing who has the first moment of knowledge of anything. What they focus on is, first and foremost, what did the judge do? And second, they focus on the timeliness of the plaintiff, in this case, bringing it to the court's attention. Now, looking at the . . . I don't know if they've been faced with that before. I don't know if they've been faced with having to weigh that before, but it seems to me it's not hard to believe there's some equitable considerations of allowing one side to claim timeliness when, in fact, they had the information and they didn't act timely. It seems to me at least at play, but I want to turn to the statute itself. Tell me why that statute doesn't apply here, in your opinion. The statute doesn't apply here on its face because it's not the same matter in controversy. Right. So you just say it does turn on the question of what is matter in controversy. It does. You asked about the statute, Your Honor. It does turn as well on the timeliness requirement, but that is, as we've established, judicially implied in the statute. Right. Now tell me why this matter doesn't involve a matter in controversy for purposes of the rule. Certainly, Your Honor. The best way to understand that is to simply compare Rogers to DeTemple, two cases of this court. Rogers completely on all fours between the two matters at issue, in a sense, such that the court concluded they were the same matter in controversy. The prior representations were all about the same racetrack in that case, the purchase of the Marlboro racetrack in Maryland, about the same exact legislation and what the claim was by the party seeking Do you think matter in controversy is limited by the complaint? No, Your Honor. No, Your Honor, it's not. It's limited by the nature of the transactions at issue and the legal issues at issue and the timing. What about a defense to a matter in the complaint? Would that be a matter in controversy? It could be, Your Honor. It was in Rogers because the defendant in Rogers said, I'm being accused of unlawfully seeking passage of legislation. At the same time, this law firm is representing someone securing lawful passage. I want to put that on in the same transaction. DeTemple is the contrasting case, and it proves that it's not a simple relevance test. It's a detailed analysis by the district court. It's his job to analyze the evidentiary linkage that's playing out. And our standard of review is abuse of discretion. Yes, Your Honor. There's no dispute about that. There's absolutely no dispute. How am I to assess the district court's exercise of discretion in this case? Give me your elevator speech. What the judge did was look at the two cases and look at what Colon was claiming was the potential evidentiary tether. Now, passing the fact that there's a 25-year gap, passing the fact that one is a single IP patent case, one is a comprehensive trade secrets case, the court listened to Colon, exercised his discretion in giving them every opportunity to show that there was enough evidentiary linkage to make it look more like Rogers than DeTemple. There's no question the judge gave Colon every opportunity. Every opportunity to show. Every conceivable opportunity. Yes, Your Honor. Every opportunity to show that as they were trying to claim massive trade secrets disclosure in this 25-year-old case, they never, ever, ever, despite months and tons of documents to look at, the 588 boxes, et cetera, able to show there was any disclosure of trade secrets. Is there at all a legal error embedded in the judge's exercise of discretion? Because that, obviously, as we all know, is an abuse of discretion. No, Your Honor. The judge simply applied the rules of evidence to say that their proffer was entirely speculative and indeed disproved by the evidence. So he's making evidentiary rulings, abuse of discretion, clearly erroneous, not making legal rulings in that regard. There are two cases here, though. You focused on the trade secret component of this case, but what about the claim that these issues, this prior litigation, was in fact relevant to the issues of anti-competitive practices and monopolistic intent? So even less attenuation, Your Honor, between this patent case from 25 or then 20 years ago compared to the conduct in the antitrust case 20 years later that's about antitrust and contracting practices. So as matters, they don't resemble each other at all. What the court did was ask the question, what is your evidentiary link you're seeking? To which they say, well, there was a broad swath of litigation between Axel and DuPont, and we think that that shows specific intent to monopolize. earlier when DuPont was defending its patent portfolio, et cetera. And so the judge said, and they agreed, well, that can only be the case if it's sham litigation, objectively baseless under the Supreme Court standards, and therefore possibly relevant to the issue of intent, to which they agreed. Well, there's only one case at issue here. All of the wars between Axel and DuPont back in the 80s are not at issue. One case is at issue. And in that case, Axel sued DuPont. But wait a second. The question of what is a matter of controversy is not reviewed for abuse of discretion. Isn't that review de novo bias? If it's a misapplication of the law, it's de novo. I didn't say misapplication. I said determination of what matter and controversy means. Isn't that legal determination? It is within the court's discretion to determine, and DeTemple says this specifically, that the matters were too attenuated between each other. In DeTemple, all sorts of evidentiary linkage was claimed, and the court looked at it very carefully. And this court endorsed that and said, it's exactly what you're supposed to do, is make those rulings as to whether the evidence is close enough or too attenuated. The court declared it speculative there. And it was evidence that the defendant was claiming that I would like to put on trial. Do you think matter and controversy is a factual determination, or do you think it's a legal determination? Factual determination of attenuation. And your fallback is it's a mixed question. Yes, Your Honor. In terms of timeliness, if I may, Your Honor, this is about the worst version of timeliness. Now, from a legal standpoint, first of all, Owens in this court says that it is judicially implied in 455. Now, granted, the cases that are cited in that case are 455A cases. But in DeTemple, 455B case, the court actually rules that one part, one of the grounds, 455B ground, was untimely. So in DeTemple, this court very clearly says timeliness is at issue. You don't think that in all matters of mandatory recusal, timeliness matters, do you? Not in all matters. In this matter, yes, for the following reason. And the case you compare it to here is the court news case, where in month one, counsel raises a concern. What would be the policy difference between a mandatory recusal where timeliness does not matter and a mandatory recusal where timeliness does matter? What would be the difference? If you've got to get out of the case, why would timeliness matter? Timeliness... You just said you could think of... I thought you said you could think of mandatory recusal where timeliness does not matter. It goes to the policy issues that Judge Diaz was raising before. How far has the case gone? And what happens after the plaintiff originally raises it? In this case, raises it and says, we don't appear to have a concern. Can't you think of a mandatory recusal that could come at the last moment of trial that the court would have to recuse itself? Yes, if the party seeking it acted with reasonable diligence and didn't lie in wait. That's the phraseology the courts use. They find it offensive, and that gives rise to the timeliness bar, if they lie in wait, and they lay in wait here. Yeah, but didn't you help them? No, Your Honor.  and when you had it... They had the information. So you held it, but when you gave it to them, your theory is, although we could have brought this forward for everybody to consider earlier, we didn't do it, but we did it... Even though we held it, we did it enough for them to still have time to have acted. So held it, Your Honor, implies that we considered that this was a 455 issue. Held it means you had knowledge of it and you didn't tell anybody. That's what I mean. And yet... And that's the record, isn't it? The record is, not that there was any cognizance of 455, but that it was in fact... No, wait. Did I say that in my question? No, Your Honor. So the answer to my question would be... It would be yes. Okay. But nine months before the trade secrets trial disclosed to Cologne, it sits on it for eight and a half of those months, raises it with the judge and says, if that's all there is, we're not concerned. On goes the whole trade secrets trial. They took their shot, they lost. Then they wait six more months, and then they say, you should recuse yourself. And the judge says, now that's untimely. You lay in wait there. You should have brought it to our attention. He didn't sit on his hands. He ordered extensive review to make sure that he had no more involvement. And then he went through a detailed exercise to determine... The question is, and by the way, I don't want there to be any suggestion in my question that I say the judge sat on his hands. I understand, Your Honor. I haven't suggested that at all. The question is, did you sit on your hands, and did Cologne sit on its hands? That's a separate question from what the... That's one question. The other question, as to timeliness, the other question is, then what the judge is to do when it is called to his attention. That's two different questions. Right. Sketch out for us, if you can, and we'll... Let's assume, hypothetically, that you made the disclosure immediately. Had a discussion. Well, I don't know if this is 455 or not, but let's just put it out there. How would this case look different? It would look identical. And we know that because Cologne sat on the information for nine months. So it would have sat on it for what? 13 months. 13 months instead of nine months. Yes, Your Honor. What if he had called that to the judge's attention? It would have been the exact same process. When it was called to his attention, he did everything that the courts say he should do. He ordered exhaustive review to make sure his own involvement wasn't any more than this one clerical transmittal of a complaint. No, it wasn't. But there wouldn't have been any question about anybody not acting timely in calling to the judge's attention on either side as to the timeliness. Well, we still would have had the timeliness issue, Your Honor, because if we had disclosed it, as Your Honor has established, in July instead of October, Cologne did nothing for nine months once they had the information. If we had disclosed it to the judge because it had occurred to us it was a 455 issue potentially, he would have done exactly what he did. Go look at 500 boxes of documents. Cologne, tell me everything you can about why it might be an evidentiary link that's important enough to become the same matter in controversy. It's exactly what he did. He did it fast. He made DuPont work very hard a month before trial, another potentially tactical move there by Cologne, but whatever, the exact same thing would have happened. If we find that the timeliness is a requirement under the statute, your opposing counsel suggests that the whole thing should be thrown out. What's your view of the remedy? If, in fact, Your Honor finds that there's no timeliness requirement and that it's the same matter in controversy? That there is no timeliness requirement, right, and the same matter in controversy. If you find both of those, we would argue that all of what has happened up to the time of the motion should stand. Why motion? Why motion? Why not knowledge on the part of the judge? Because the judge... Are you making that distinction between the motion and his knowledge? His knowledge is informed by everything that's put in front of him. But I'm asking this. I'm asking this a factual question. He was informed of the issue before any motion was filed, isn't that correct? He was informed of the issue, yes. And you time yours. I think they timed theirs from the time they called this, said you may have an issue. You don't use that same time, do you? No, Your Honor. You use a formal motion. Yes, Your Honor, and the reason is not a procedural issue. It's a substantive issue. When they bring it to his attention... And then your answer would be, though, in response then, everything that preceded the motion which you say is required would stand. Absolutely, and that's entirely consistent with their reliance on the Polaroid case in the Federal Circuit, which says it's manifestly unfair to just simply wipe away everything before all of the grounds... It's not manifestly unfair if the judge has the notice and the notice is hypothetical and the notice fits all the requirements of the statute or case law to require the judge to step down before a formal motion is filed. There's nothing manifestly unfair about that, is there? If the moment Your Honor is focused on is the moment at which he has... Any moment. When he has enough knowledge to trigger the statute, that would be correct, Your Honor. It would not be manifestly unfair. There's nothing manifestly unfair about that. No, Your Honor. Not if he has all the information. I have about a minute and a half. Okay. And so all I would say about the antitrust case is that American Tobacco and Hanover Shoe have absolutely nothing to do with this case. American Tobacco was a price-fixing criminal conspiracy case in which the court, right in its opinion, said this case will not be used as precedent for anything other than a conspiracy case. Hanover Shoe picks up the same language. Of course the court in American Tobacco would say that you don't have to go on and prove a fact in a price-fixing conspiracy case like American Tobacco. That's nothing like this case. We have supply agreements here, unilateral. They are indisputably a rule-of-reason case. And so we have a long line of precedent for how to deal with that, starting with the Supreme Court in Tampa Electric, all the way through this court's decisions in Chuck Speed, in R.J. Reynolds, all the way through the leading foreclosure cases, Densply, Microsoft, LePage's, all say the same thing. You have to measure. You can't just say, well, I didn't get a contract, so I have an antitrust case. That flies in the face of fundamental antitrust law. What you have to show is market impact. And in all those cases, certainly the big three cases, Densply, Microsoft, LePage's, it was a ubiquitous impact on the market. They had smothered the market with their exclusive dealing contracts. Here, undisputed. Fifteen percent of DuPont's revenue, at most, was covered. That doesn't even include Tayshin, which has 45% of this market. So no foreclosure, and no possibility of finding monopoly power in a case where you've got 55% market share, 17 straight years of erosion of that share, and such a strong competitor. No case has found that. Your Honor, I see my time is up. Thank you very much. Thank you very much. Mr. Kinnaird. Thank you. Your Honor, I think it's baffling to say that OXO had nothing to do with this case. This was the public disclosure of the very matter that was being asserted as trade secrets. Now, they rely on a conclusory finding that these aren't the same trade secrets. The district court, we had presented actual, basically unrefuted evidence of that fact. But it doesn't have to be exact. And that's because the jury is going to consider whether the asserted trade secret, for example, has independent economic value. If what was disclosed in OXO is 95% of the same information, a jury would not find that trade secret to have value. This issue was also relevant to not only whether it was secret, but whether DuPont took reasonable secrecy measures, and also to intent on misappropriation, because Mr. Schultz had told Cologne, this information I'm giving you, it's all public, including from the OXO litigations. So this was directly relevant. It's the core of our case. You'll hear more of that from Mr. Clement. And we tried to put on an evidence. We wanted to call a McGuire Woods attorney to actually testify as to the correspondence that said we're declassifying all the trial exhibits, which was all the technology, an excruciating detail, as Mr. Schultz said, for the polymerization process. And except for a few enumerated exhibits that were held back. So this is the core, OXO is one of the core principles of this case. On trade secret, antitrust rather, it's also very important. You just heard the reliance of the district court on the so-called dwindling market share. But we wanted evidence to understand the agreement, the global agreement between OXO and DuPont, which presumably involved cross-licensing in different markets, which would have explained what the foundation for the market power was and reasons that it might disclose. So in discovery, all we have to show is it's relevant to issues in the case. And there was also, we had a claim of sham litigations as being part of their strategy. And cases show that could go back 25 years. If there is not a recusal that's required in this case, are you making an argument that that, will you allow discovery into that earlier litigation for your defense? There was only very little limited discovery. So are you asserting abuse of discretion on the discovery? Well, what our point is, is that he shouldn't even be deciding the questions. Oh, no, I got that. I'm moving beyond that though. No, we haven't raised an issue as a separate issue, but I would note three of the four rulings that we have appealed came after the recusal order. It is an ultimate, I think, conclusion of law, whether or not it's a matter in controversy. And we certainly did not lie in wait. We were losing at every turn in the trade secret. When we understood the legal significance, we brought it to the court's attention. We had inferior knowledge of the facts. And I think the Polaroid case. Let me say this, your time has run out. Do you want five seconds to make one conclusion? Thank you. Oh, no. No, no, no. I'm not sure I can say much in five seconds. Thank you. Thank you very much. We will step down and greet counsel and go to the next case.
judges: Dennis W. Shedd, Andre M. Davis, Albert Diaz